T.C. Memo. 1998-368

UNITED STATES TAX COURT

KENNETH AND SHEILA SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16296-97.               Filed October 8, 1998.

<u>Gregory G. McGill</u> and <u>Douglas G. Wymore</u>, for petitioners.

<u>Anne W. Durning</u>, for respondent.

MEMORANDUM OPINION

DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

[1]   Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax for 1994 in the amount of $9,200.

After a concession by respondent,[2] the issue remaining for decision is whether petitioners are entitled to business expense deductions.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Phoenix, Arizona, on the date the petition was filed in this case. All references to petitioner in the singular are to Kenneth Smith.

All of respondent's substantive adjustments in the statutory notice of deficiency involve amounts claimed with respect to petitioner's involvement with Tracstar Simulcasting, Inc. (Tracstar).[3] Tracstar provided live satellite transmission of dog and horse races to various off-track betting (OTB) locations. It installed all of the equipment at the racetracks and the OTB locations necessary for sending and receiving the satellite signals. The racetracks were generally located in Arizona, but

---

[2]   In the event that the Court holds that petitioners are not entitled to the claimed Schedule C deduction for interest paid with respect to their motor homes, respondent concedes that petitioners are entitled to an additional sec. 163(h)(3) qualified residence interest deduction for such interest.

[3]   Respondent's adjustment to petitioners' liability for alternative minimum tax is computational and will be resolved by the Court's holding on the issue in this case.

the satellite signals were transmitted to OTB locations throughout the United States.

During 1994, petitioner was the owner of record of approximately half of Tracstar's outstanding shares of voting stock. He served as Tracstar's vice president and as a member of its board of directors.

Petitioner was in charge of Tracstar's day-to-day operations. He supervised the engineering staff and their installation of equipment in the field. He represented Tracstar at various trade shows. He was also responsible for raising additional capital for Tracstar's future projects.

Petitioner was often required to purchase equipment to be installed at Tracstar's sites. In lieu of obtaining financing for the equipment, petitioner was authorized to charge the equipment on Tracstar's American Express Corporate credit card (the Corporate card).[4] He charged other Tracstar expenses on the Corporate card, including his travel and meal expenses incurred in connection with Tracstar's business. Petitioner also charged personal expenses on the Corporate card.

Petitioner also had an American Express Gold credit card (the Gold card) in his own name. As with the Corporate card, he charged Tracstar's business expenses on the Gold card. During

---

[4] Tracstar's employees David C. Lunder and Jim Pitcher were also authorized to use the Corporate card. Their itemized charges are stated separately from petitioner's on the monthly statements.

1994, petitioner Sheila Smith, and petitioners' daughter, Tara Smith, were also authorized to use the Gold card.  The monthly statements separately identified petitioner's, Sheila's, and Tara's charges.  Each of them regularly charged personal expenses on the Gold card.  Petitioners also had numerous Visa credit cards which were used solely for charging personal expenses.

The monthly statements for both the Corporate card and the Gold card were forwarded to Tracstar.  Kathy Parsons, Tracstar's bookkeeper during 1994, would review each of the itemized charges and determine whether a charge constituted a business expense of Tracstar or a personal expense.  Regardless of the nature of the charges, Tracstar would pay the entire account balance.  To the extent that personal expenses were charged to the Corporate Card and the Gold card by petitioner and his family, the amounts of such personal expenses which were paid by Tracstar were debited to an account labeled "Due from Officer Smith" (the personal expense account).[5]  Tracstar's balance sheet dated December 31, 1993, shows a debit balance in the personal expense account in the amount of $19,717.28.

In early August of 1994, Tracstar's management, including petitioner, decided to begin issuing periodic bonuses to its

_____

[5]     This accounting procedure was not followed for the Dec. 22, 1994, Gold Card statement.  Rather, after making her determination of the personal versus business nature of the expenses, Ms. Parsons forwarded the statement to petitioner for him to pay in full and credited the personal expense account by the amount of the business expenses for the billing period.

officers. The after-tax amounts of petitioner's bonus payments were credited against the debit balance in the personal expense account. In other words, the bonus payments were used to repay the amount owed by petitioner to Tracstar for personal expenses charged to the Corporate card and the Gold card. The total amount credited to the personal expense account in this manner during 1994 was $21,798.66. Tracstar's balance sheet dated December 31, 1994, shows a debit balance in the personal expense account in the amount of $20,289.68.

Petitioner ceased working for Tracstar in January 1995. He disputes his liability for some of the charges which Ms. Parsons characterized as personal expenses and debited to the personal expense account. Litigation over the amounts payable by petitioner and Tracstar was ongoing at the time of the trial in this case.

Petitioners filed a joint Federal income tax return for 1994. Their return was prepared by Tracstar's accountant, Michael Klecka. Petitioners reported the total of petitioner's regular ($65,000 = 26 payments times $2,500) and bonus compensation ($31,680 = 11 payments times $2,880) from Tracstar as wages and other compensation on petitioners' 1994 return.

Petitioners claimed a Schedule C business loss deduction in the amount of $19,553. In the statutory notice of deficiency, respondent disallowed the claimed deduction. The Schedule C and

a self-prepared statement attached to petitioners' return reports

no gross receipts and claims the following expenses:

| | | |
|---|---:|---:|
| Car and truck expenses | | $97 |
| Depreciation | | 13,428 |
| Motor home | $8,133 | |
| Motor home | 4,777 | |
| Computer | 518 | |
| Interest | | 5,579 |
| Mortgage | 1,757 | |
| Other | 3,822 | |
| Office expense | | 193 |
| Rental of vehicles, machinery, & equipment | | 101 |
| Travel, meals, & entertainment | 231 | |
| After 50% limitation | | 115 |
| Miscellaneous expense | | 40 |

Petitioners claimed a Schedule A deduction for unreimbursed

employee business expenses in the amount of $23,494, after the

section 67(a) limitation.  In the statutory notice of deficiency,

respondent disallowed the claimed deduction.  Petitioners

attached a Form 2106-EZ and a self-prepared statement which list

the claimed expenses, before the limitation, as follows:

| | |
|---|---:|
| Travel expenses | $862 |
| Repairs & maintenance | 2,522 |
| Various gifts | 318 |
| Computer & office supplies | 29 |
| Telephone | 169 |
| Tracstar Simulcasting, Inc #86-0692628 | 21,169 |

At trial and in their opening brief,[6] petitioners made no

distinction between the claimed Schedule C trade or business

expenses and the claimed Schedule A employee business expenses.

Their accountant, Michael Klecka, was not called to testify as to

---

[6]    Petitioners did not submit a reply brief as they were
instructed to by the Court.

the origins of the amounts claimed. In general, petitioner's testimony focused on disputing Ms. Parsons' characterization of the Corporate card and the Gold card charges. Other than the claimed deductions related to the motor homes, petitioners have offered no persuasive evidence in the record to account for the amounts claimed on their 1994 return.

Respondent's determinations in the statutory notice of deficiency are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are strictly a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including the trade or business of being an employee. Commissioner v. Flowers, 326 U.S. 465 (1946). Taxpayers are required to substantiate amounts claimed as deductions by maintaining the records needed to establish entitlement to the deductions claimed. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Disputed Credit Card Charges

Petitioners argue that the disputed credit card charges are Tracstar's business expenses. The disputed charges highlighted

by petitioner total approximately $17,500. Petitioner contends that he is entitled to deductions for these expenses because they constitute business expenses paid by him during 1994.

To the extent that the disputed expenses are personal in nature, they are not deductible pursuant to section 262. To the extent that the disputed expenses are Tracstar's business expenses, they are not deductible by petitioner because he has failed to establish that his unreimbursed payment of Tracstar's business expenses qualifies as an ordinary and necessary expense of his own business under section 162(a). Deputy v. du Pont, 308 U.S. 488 (1940); Kaplan v. Commissioner, 21 T.C. 134, 146 (1953).

The litigation over the nature of the expenses will ultimately determine who is liable for the disputed charges. If any of the expenses are found to be business in nature, petitioner is likely to be reimbursed by Tracstar to the extent he paid for them with his bonus payments. We hold that petitioner is not entitled to deductions for the disputed expenses.

Motor Home Interest and Depreciation

In 1990, petitioners purchased a 1989 Southwind motor home. On or about November 1, 1994, petitioners replaced the 1989 Southwind motor home with a 1994 Dynasty motor home. On their 1994 return, petitioners claimed deductions for interest and depreciation for both of the motor homes. Petitioners did not maintain a log of the business use of the motor homes. In their

opening brief, petitioners take the position that only the 1989 Southwind motor home was used in connection with Tracstar's business.

Based on the record, we find that petitioners have not substantiated with adequate records the extent, if any, that their motor homes were used for business purposes during 1994. We refuse to rely on petitioner's self-serving testimony of the alleged business use of the motor homes because it is not corroborated by any other individual's testimony or any written records of business use. <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 219-220 (1992); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). Other than petitioner's uncorroborated testimony, the only evidence of any business use of the motor homes is several photographs. We find these photographs unreliable because they do not reveal when they were taken and do not identify the motor home pictured. We hold that petitioners are not entitled to interest and depreciation deductions for business use of their motor homes.[7]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

------

[7] Respondent concedes that petitioners are entitled to an additional qualified residence interest deduction in the amount of $5,579 for interest paid with respect to the motor homes during 1994. See <u>supra</u> note 2.